**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| LATOYIA D. FREEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:05-cv-1186-RLY-TAB |
| | ) |
| HOLIDAY INN EAST, | ) |
| | ) |
| Defendant. | ) |

**Entry Discussing Motion for Summary Judgment**

As used in this Entry, "Holiday Inn" refers to defendant Holiday Inn East and "Freeman" refers to plaintiff Latoyia Freeman.

This action is before the court on Holiday Inn's motion for summary judgment, to which Freeman has responded.

Whereupon the court, having read and examined the pleadings and the motion just described, together with Freeman's responses to the motion and Holiday Inn's reply to those responses, now finds that the motion for summary judgment must be **granted.** This conclusion rests on the following facts and circumstances:

1. Freeman alleges in this case that Holiday Inn discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5 ("Title VII"). Jurisdiction over this claim exists through 28 U.S.C. § 1331.

2. As noted, Holiday Inn seeks the entry of summary judgment, which "is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the Federal Rules of Civil Procedure). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

3. Freeman has opposed the motion for summary judgment, but not with admissible evidentiary material. "[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law." *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). Because the defendant's motion is unopposed in relation to the evidentiary record, the well-supported facts on which that motion is based are accepted as true for the purpose of ruling on that motion. This is the result of Local Rule 56.1(g) and of cases interpreting it and similar local rules within this Circuit. *Ammons v. Aramark Uniform Services, Inc.,* 368 F.3d 809, 817-18 (7th Cir. 2004); *Johnson v. Gudmundsson,* 35 F.3d 1104, 1116 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994).

4. Holiday Inn East has established the following through the uncontested material filed in support of its motion for summary judgment:

a. Holiday Inn hired Freeman, an African-American female, on August 7, 2000. An at-will employee, Freeman worked as a server in the Damon's Restaurant located within the hotel. On Freeman's first day of work, Holiday Inn provided her with a copy of its Associate Handbook. The handbook contains, among other things, a policy explaining that neither harassment nor sexual harassment will be tolerated among Holiday Inn employees. The policy makes clear that any harassing conduct will lead to discipline, up to and including termination. Freeman also signed a separate document reinforcing the hotel's commitment to prohibiting sexual harassment and reiterating the consequences of violating the policy.

b. On June 25, 2004, Sales Associate Rachel Westfall, a Caucasian female, submitted a written complaint to Human Resources indicating that Freeman had sexually harassed her. Specifically, Westfall complained that, over a two-week period in June 2004, Freeman had touched her side, stuck her hand up Westfall's shirt, and reached for Westfall's buttocks. Westfall claimed that she had instructed Freeman to stop touching her, but Freeman had ignored her.

c. Although the onsite Human Resources Manager often took the lead in harassment investigations, the person holding that position at the time was, by coincidence, Westfall's mother. To avoid even an appearance of bias, General Manager Mike Arnold made the decision to investigate the matter himself. Arnold began his investigation by interviewing Westfall. Westfall reiterated the allegations nearly verbatim as they had been laid out in her written complaint. She also was visibly distraught about the situation. Although Freeman denied harassing Westfall, Arnold ultimately credited Westfall's account at least in part because of the detail she conveyed and her visibly shaken appearance.

d. Holiday Inn's policy gave Arnold the latitude to terminate Freeman for the conduct Westfall had described -- a fact both Arnold and Freeman herself acknowledge. Yet Arnold chose to give Freeman another chance. Specifically,

Arnold conveyed the seriousness of the situation, reviewed the hotel's no-tolerance harassment policy with Freeman, conveyed that there was no room for harassing conduct at the hotel, issued Freeman a written warning, and told her that she would be terminated if she engaged in further harassing conduct. As she left Arnold's office, Freeman agreed to stay away from Westfall in the future.

e.      On September 23, 2004, Westfall told Arnold that Freeman had continued her harassing conduct. Specifically, Westfall stated that while she was taking a break on the hotel's back dock (a designated break area outside of Damon's restaurant), Freeman had come to the dock and caused a scene by loudly complaining about Westfall. Westfall also reported that when she later entered the restaurant to get a drink refill, Freeman made a demeaning face at her and uttered a snide remark. Westfall, again, seemed genuinely upset about the incidents in question, and Arnold believed her complaint was sincere.

f.      Furthermore, Westfall had a witness to Freeman's inappropriate behavior -- hotel Controller Krissy Holton. Arnold subsequently interviewed and obtained a statement from Holton. Holton confirmed that Freeman had indeed caused a scene. According to Holton, she and Westfall had been standing on the back dock when Freeman entered the area. Upon seeing Westfall, Freeman began jumping up and down, and exclaimed, "F _ _ . I guess I'm not allowed to be out here now, am I?"

g.      Based upon the information gathered from Westfall and Holton, Arnold decided Freeman had failed to abide by his prior warning. Arnold (with the approval of Corporate Human Resources Director Jean Dunn) concluded that he had no choice but to terminate Freeman for her continuing inappropriate workplace conduct. Arnold met with Freeman on September 28, 2004, to communicate the termination decision. Although Freeman admitted to perhaps making a face of frustration, she denied saying anything or cursing, however, Arnold reaffirmed his termination decision.

h.      After Freeman's termination, Holiday Inn continued recruiting and hiring African-Americans to work both in the hotel and in Damon's Restaurant.

5.      Freeman claims in this action that she was discriminated against based on her race when her employment was terminated by Holiday Inn. Freeman alleges that when co-worker Westfall complained about Freeman, Freeman was not given an opportunity to have witnesses speak on her behalf, but Westfall was allowed to do so.  Freeman further alleges that Holiday Inn treated African-American employees and customers unfairly.

6.      "It is well-established that a plaintiff in a Title VII case may proceed under a direct or indirect method of proof." *Butts v. Aurora Health Care*, 387 F.3d 921, 924 (7th Cir. 2004) (citing *Mateu-Anderegg v. School Dist.,* 304 F.3d 618, 623 (7th Cir. 2002)); *see also Stone v. City of Indianapolis Public Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

a. Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003); *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir. 1997). In short, "[d]irect evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rogers,* 320 F.3d at 753 (internal quotation omitted). "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Rhodes v. Ill. Dept. of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004)(quoting *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994)). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003).

b. Freeman has come forward with no direct evidence of discrimination. What she must do to survive Holiday Inn's motion for summary judgment, therefore, is establish the elements of a *prima facie* case under the indirect, burden-shifting method established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981).

c. Under the alternative method, in *McDonnell Douglas,* the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993). The test consists of three steps. First, the plaintiff must establish a *prima facie* case of discrimination. Second, once the *prima facie* case is established, the defendant must state a legitimate, non-discriminatory reason for the adverse employment action. Finally, if a legitimate, non-discriminatory reason is offered, the plaintiff must come forward with evidence to show that the stated reason is not the true one, but only a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802-04; *DeLoach v. Infinity Broadcasting,* 164 F.3d 398, 401 (7th Cir. 1999).

7. "Under the *McDonnell Douglas* scheme, the plaintiff bears the initial burden of establishing a *prima facie* case." *Ballance v. City of Springfield,* 424 F.3d 614, 617 (7th Cir. 2005) (citing cases). The elements of a *prima facie* case of discrimination are these: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the employer treated at least one similarly situated employee not in her protected class more favorably. *Little v. Ill. Dept. of Revenue*, 369 F.3d 1007, 1011 (7th Cir. 2004). With respect to this last element, it is the plaintiff's burden to present admissible evidence of a specific employee outside her protected class who was treated more favorably than she, *Adams,* 324 F.3d at 939, and that employee must be "directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002).

8. With respect to Freeman's claim of discrimination based on her race, the *McDonnell Douglas* analysis yields the following:

a. Freeman is African-American and her employment was terminated. These facts satisfy the first and third elements of a *prima facie* case.

b. A co-worker complained about harassment by Freeman, and the investigating employee found her complaint credible. It was determined that Freeman violated Holiday Inn's written policy concerning sexual harassment. After receiving a warning, a subsequent complaint was alleged by the same co-worker, and it was decided to terminate Freeman's employment after a witness corroborated the complainant's account of what happened. Because of this, Freeman was not meeting her employer's legitimate expectations. This negates a showing of the second element of a *prima facie* case.

c. There has been a complete failure of evidence as to the fourth element of a *prima facie* case of discrimination. *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 733 (7th Cir. 2004). Freeman has not shown that a similarly situated non-minority employee was treated more favorably than was Freeman herself. Specifically, she has not identified a non-minority employee whose employment was allowed to continue after receiving more than one complaint of harassment against him/her. Freeman's failure to satisfy the similarly situated prong is fatal to her *prima facie* case. *See Ezell v. Potter,* 400 F.3d 1041, 1049-50 (7th Cir. 2005).

d. "Without a *prima facie* case, the plaintiff cannot withstand summary judgment." *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993).

e. Even if the court concluded otherwise with respect to the existence of a *prima facie* case here, Holiday Inn has shown that the decision to terminate Freeman's employment was based on a legitimate, nondiscriminatory reason. That reason was her violation of the company policy against harassment.

f. Freeman has not shown that this reason was a pretext. Pretext means "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.,* 51 F.3d 64, 68 (7th Cir. 1995); *see also Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000) (to show pretext, plaintiff must present evidence that each of the proffered reasons is either a lie or completely lacking a factual basis). Whether there was unfairness in the severity of the measure taken, or whether a different decision could reasonably have been made as a result of the investigation and sessions with Freeman prior to the termination of her employment are not material to the question of pretext or to any other question which must be addressed in this lawsuit. At this final stage of the *McDonnell Douglas* burden-shifting analysis, therefore, Freeman points to nothing which reasonably suggests that the reasons offered by Holiday Inn for terminating Freeman's employment were lies to cover up race discrimination. Holiday Inn is entitled to the entry of summary judgment as to the claim of discrimination based on race.

9. The Supreme Court has explained that the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990). Through the process described above, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998). "'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)). For the reasons explained above, Freeman has failed to meet this burden. Accordingly, Holiday Inn's motion for summary judgment must be **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 2/5/07

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana